# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    v.                                             Criminal Action No. 2:13cr34

MISTY AUTUMN GRAFTON,

    Defendant.

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Misty Autumn Grafton, in person and by counsel, Stephen G. Jory, appeared before me on December 5, 2013. The Government appeared by Stephen Warner, its Assistant United States Attorney.

The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Twenty-Seven of the original Indictment.[1]

The Court proceeded with the Rule 11 proceeding by first placing Defendant under oath and advising her of her duty to tell the truth and the consequences of her failure to do so (fine and or imprisonment for perjury, false swearing under oath and/or contempt of court). The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government to summarize the written Plea Agreement. Defendant stated the agreement as summarized by counsel for the Government was correct and complied with her understanding of the same. Upon inquiry, the AUSA advised that there had been a prior offer made to Defendant. That offer was based on a quantity of more than then grams of pseudoephedrine. The current offer is based on a quantity of at least 8 but less than 10 grams of

---

[1] The Indictment has been superseded; however, the AUSA advised he would move to dismiss the Superseding Indictment as to this defendant at sentencing.

pseudoephedrine, and is therefore more favorable to Defendant than the prior offer. Counsel for Defendant agreed, advising that discovery supported the lower quantity. He also advised and Defendant concurred that he had discussed both offers with Defendant. The Court **ORDERED** the written Plea Agreement filed.

The Court inquired of Defendant concerning her understanding of her right to have an Article III Judge hear the entry of her guilty plea and her understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant stated in open court that she voluntarily waived her right to have an Article III Judge hear and accept her plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting her plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of her counsel and the representations of the Government, the Court finds: 1) the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and 2) the written waiver and consent was freely and voluntarily executed by Defendant, Misty Autumn Grafton, only after having had her rights fully explained to her and having a full understanding of those rights through consultation with her counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned Magistrate Judge examined Defendant relative to her knowledgeable and voluntary execution of the written plea bargain agreement signed by her, and finds the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant.

The undersigned inquired of Defendant regarding her understanding of the written plea agreement. Defendant stated: she had read the written agreement line by line, she and her attorney had read and reviewed the agreement line by line, she understood the terms of the written plea agreement and that it contained the whole of her agreement with the Government. She stated no promises or representations were made to her by the Government other than those terms contained in the written plea agreement.

The undersigned reviewed with Defendant Count Twenty-Seven of the Indictment, including the elements the United States would have to prove at trial, charging her with possession of pseudoephedrine to be used to manufacture methamphetamine, in violation of Title 21, United States Code, Section 841(c)(2). From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against her.

The Court advised and determined Defendant understood that if she is not a United States citizen, an adjudication of guilty may result in her being removed from the United States, denied citizenship, and denied admission to the United States.

The undersigned then reviewed with Defendant and Defendant stated she understood the statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on that charge was imprisonment for a term of not more than twenty (20) years; a fine of not more than $250,000.00 could be imposed; that both fine and imprisonment could be imposed; she would be subject to up to three (3) years of supervised release; and the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable within 40 days following entry of her guilty

plea. She also understood that her actual sentence and her advisory guideline sentence could be increased if she had a prior firearm offense, violent felony, or drug conviction. She also understood she might be required by the Court to pay the costs of her incarceration and supervised release.

The undersigned also reviewed with Defendant her waiver of appellate rights as follows:

Ct: Did you and Mr. Jory discuss that under 18 USC section 3742 you have a right within 14 days of sentencing to appeal your conviction and sentence to the Fourth Circuit Court of Appeals?

Def: Yes.

Ct: Did you also discuss with Mr. Jory and do you understand from that discussion that under 28 United States Code Section 2255 you may file a motion collaterally attacking or challenging your sentence and how that sentence is being executed?

Def: Yes.

Ct: Did you understand from your discussions with Mr. Jory, and by reading paragraphs 14 and 15 of your written plea agreement, that if the District Judge imposes a sentence of probation, that is not more than probation, you give up your right to directly appeal that sentence under 18 USC section 3742 to the Fourth Circuit and you give up your right to appeal – not to appeal, but to to collaterally attack or challenge that sentence by filing a motion under 28 USC section 2255?

Def: Yes.

Ct: Did you knowingly and intelligently give up those two valuable rights on the condition that you receive probation?

Def: No.

Ct: You did not? Well, maybe my question was cumbersome. You read those two provisions in your written plea agreement?

Def:   Yes.

Ct:    Did you understand those two provisions to give up those two valuable rights if the judge sentences you to probation?

Def:   Yes.

Ct:    You give up those two rights if the judge sentences you to any sentence within the statutory maximum which is more than probation. Is that correct?

Def:   Yes.

From the foregoing colloquy the undersigned determined that Defendant understood her appellate rights and knowingly gave up those rights pursuant to the written plea bargain agreement.

The undersigned Magistrate Judge inquired of Defendant, her counsel, and the Government as to the non-binding recommendations and stipulations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Twenty-Seven of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offense contained in Count Twenty-Seven of the Indictment and make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations and stipulations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations contained in the written plea agreement and/or sentenced

her to a sentence which was different from that which she expected, she would not be permitted to withdraw her guilty plea. Defendant acknowledged her understanding and Defendant maintained her desire to have her plea of guilty accepted.

Defendant also understood that, although she was pleading guilty to a count in the original Indictment, the Superseding Indictment would not be dismissed at this time, and the undersigned does not have the authority to dismiss the Superseding Indictment. The United States would move to dismiss the Superseding Indictment and the remaining counts (if any) in the original Indictment against her at sentencing.

Defendant also understood that her actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that she understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced her to a higher sentence than she expected, she would not be permitted to withdraw her guilty plea. However, Defendant stated she understood that the District Judge would calculate the applicable advisory sentencing guideline range, would consider that range, and any possible departures under the advisory sentencing guidelines and other sentencing factors under 18 U.S.C. §3553(a).

Defendant further understood there was no parole in the federal system, although she may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Thereupon, Defendant, Misty Autumn Grafton, with the consent of her counsel, Stephen Jory, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count Twenty-Seven of the original Indictment.

The Court would generally hear the testimony of a Government witness at this point in the hearing in order to provide an independent basis in fact to support the guilty plea. In this case, however, the parties had agreed to a proffer by the AUSA in place of live witness testimony. Defendant stated she agreed with this procedure. The AUSA then proffered that the United States Forest Service and the Tucker County Sheriff's Department were involved jointly in an investigation of methamphetamine manufacture in and around Tucker County, West Virginia. The investigation included interviews, searches and review of pseudoephedrine purchases. The investigation included six people who played very different roles in the manufacture and distribution of methamphetamine. Defendant was one of the people involved. She was interviewed by officers, and admitted that in March 2013, co-defendant Eric Pennington asked her to purchase Claritin D 24-hour, because he had no way to get to the pharmacy. She did go purchase the Claritin. She further admitted that in April that same year, Pennington asked her to buy Claritin again, and she did. On this occasion, however, she was aware the substance was to be used to make methamphetamine. The first time she was not aware. She stated she knew "Paco" was teaching others to make meth, including Michael White. She also heard "Shane" and Pennington talking about making meth, but did not know if they ever did, because she never saw anyone actually making meth. A review of NPLEx indicated Defendant purchased pseudoephedrine products three times in April and twice in March. Count 27 of the original Indictment reflects the purchase of Claritin D on April 21, 2013, at the Rite Aid in Parsons, West Virginia.

Defendant stated she heard, understood and agreed with the Government's proffer. The undersigned United States Magistrate Judge concludes Defendant's plea of guilty to the offense charged in Count Twenty-Seven of the Indictment is supported by the Government's proffer.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood her right to have an Article III Judge hear and accept her plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting her plea; Defendant understood the charges against her, not only as to the Indictment as a whole, but in particular as to Count Twenty-Seven of the original Indictment; Defendant understood the consequences of her plea of guilty, including the maximum statutory penalty; Defendant made a knowing and voluntary plea of guilty to Count Twenty-Seven of the Indictment; and Defendant's plea is independently supported by the Government's proffer, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained Count Twenty-Seven of the original Indictment and recommends she be adjudged guilty on said charge as contained in Count Twenty-Seven of the original Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is continued on release pursuant to an order setting conditions of pretrial release previously entered in this matter.

It is so **ORDERED**.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: December 9, 2013.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE